Number 191802 City of Providence et al. v. US Department of Justice et al. Good morning. May it please the Court, Ryan Pandya on behalf of the United States. I'd like to reserve two minutes for rebuttal. You may. Congress granted the Office of Justice Programs to promote the effectiveness and coordination of law enforcement at all levels of government. To achieve those ends, Congress granted OJP many tools, including authority to place special conditions on all grants and to require grant applicants to certify compliance with applicable federal laws. These broad grants of statutory authority reflect the common sense idea that grant recipients should not be undermining federal law enforcement priorities. The District Court erred by narrowly construing OJP's statutory authority. The little time we have together this morning, I'm going to primarily focus on one statute, 34 U.S.C. Section 101-02-A6. The Special Conditions Statute was amended by Congress in 2006, at the same time the Burn JAG Program was created, to permit the Office of Justice Programs to place special conditions on all grants. Special conditions on all grants. This is broad authority that the Office of Justice Programs has exercised without challenge over the past decade to support over 50 grant-wide special conditions, including covering topics such as human trafficking, the use of force, bias in policing, training requirements, information reporting requirements. The District Court erred by finding that OJP's authority to place special conditions on grants was limited to powers enumerated elsewhere in the OJP or Burn JAG statute or delegated by the Attorney General. But if that was the case, there's no reason why Congress would have amended the statute in 2006 to expressly confer authority to place special conditions on all grants. OJ, could you just help me texture-y how you get to your reading, given that provision? Yes. So, I mean, if we take a look at the statute, it provides that we look at Section 101-02, which enumerates the duties and functions of the Assistant Attorney General, and it refers to the specific general and delegated powers under Subpart 6. It provides that the power exercises the powers that are vested in the Assistant Attorney General or delegated by the Attorney General. That's power that existed before 2006. And then the including phrase is what you're relying on, but I just don't quite see how you were able to treat that including phrase as not limited by what comes before it. Well, I think including can be a word. It can be sometimes. I'm just saying, given the way this is structured textually. Well, I think the structure has to be read against. We know including can be a word of clarification or it can be read conjunctively or as a word of expansion. And here we know that before 2006, the first part of Subpart 6 existed, so those powers existed. Congress would not have amended the statute to have done nothing. And I point Your Honor to the Ninth Circuit's decision in Los Angeles v. Barr, which was the only other... I'm just stuck on the text. You exercise such other powers and functions as may be invested. Where do you get the verb for the including part that's not limited by what comes after exercise? Do you see what I'm saying? I understand your question, but I think the way we're reading including, it's a word. It should be read conjunctively. I know you keep saying it, but you need a verb before that that says that you can exercise the power to place special conditions. But the way it's written is he can exercise such other powers and functions as may be vested in the AG, pursuant to this chapter or by delegation, and then including. So where do you get the verb other than that exercise such other powers as may be vested, pursuant to this chapter or by delegation? Well, exercising is the verb. Exercise may exercise such powers that were vested, the pre-2006 powers. But then it would read exercise including, which doesn't make a lot of sense. Well, I think including here is used as a conjunction to refer to Anne. So you may exercise the pre-2006 powers and you may exercise. But the word exercise isn't repeated. It doesn't say and you may exercise. Right. That would make a very significant difference here. Well, I don't think so. It refers to including placing special conditions on all the rounds. You're skipping what comes before. You need a verb for the phrase including. You want it to be exercise. So then I would read it as shall exercise including powers. But that doesn't make sense. No, I think what I read it as may exercise such other powers, including placing special conditions on all grants. Isn't your reading that you're replying with to my two colleagues' questions rendered less plausible by the fact that on your reading, the authority that you argue for would be applied not only with respect to discretionary grants but with respect to formula grants. And in the case of formula grants, the criteria for making a formula grant is expressly set out elsewhere so that the amendment by implication is not particularly plausible. Well, let me address Your Honor's question in three parts. I mean, first, including placing special conditions on all grants and determining priority purposes for formula grants. So if we look at the statute refers to all grants and then formula grants as a subset of all grants. Secondly, we're not contending, absolutely not contending, that we have authority to deviate from the formula for awarding the amount of funds here. And third, if I can point to the Ninth Circuit's decision in Los Angeles v. Barr, which was the only appellate court to directly consider the meaning of the amendment, that court found that this was a new grant of power. And maybe if I can talk about why that is. Now, the Ninth Circuit found that special conditions were a regulatory term of art. The regulation the Ninth Circuit cited was from 1988 and referred to special conditions for high-risk grantees. That regulation on its face referred to one type of special condition, one that by regulation individually applied to high-risk grantees. But it makes no sense to limit Section 101.026 to one class of special conditions. In doing so, it's inconsistent with federal grant regulations and in more than a decade of OJP practice and probably practice by other grant-making agencies as well. A condition that applies to an individual grantee is referred to a specific condition, not a special condition or an additional requirement. In fact, the regulation that the Ninth Circuit cited was repealed in 2014 to reflect the current grant-making terminology. The citation was QCFR 200.207A. When was this statute passed, 102A6? It was passed in 2006. So what's the significance of the repeal? The regulation referred to it as a title of special condition. We know that previous statutes referred to special conditions for high-risk grantees. So presumably there's other types of special conditions, and for the last 13 years at least the Office of Justice Programs has treated special conditions as conditions that apply to all grants. If we look at Section 101.09, which also uses the term special conditions, that refers to auditing grants for compliance with special conditions. It's used in a manner that suggests special conditions apply to all grants. But that just leaves open the question of what a special condition is. I'm not following the argument. Well, a special condition is a condition that's applied to the grant. So it's a condition that applies grant-wise. So it applies to all of the recipients of the grant. Right, but if the special condition is the occurrence of the Ninth Circuit said a reference to that reg about high-value grantees, then it doesn't help you very much to make that point, does it? Well, it does because the regulation from 1988 that the Ninth Circuit cited referred to special conditions for high-risk grantees. Now we know, though, that the current practice, at least as of 2006 and to the present, refers to a special condition for a high-risk grantee is referred to as a specific condition or an additional requirement. If we take a look at the Office of Justice Programs grant documents in this case, the conditions that are applied, not just the three challenge conditions in this case, but the 50-plus conditions that are attached to the Burn-Drag grant are called special conditions. Is that like the Buy America, et cetera? Yeah, there's like a number. Do you have any one of those that's not traceable to an independent statutory provision? Well, I think these conditions are traceable to statute, but there's a number. For example, can you just tell me that's not? Well, I mean, condition number 22 refers to nondisclosure agreements. Conditions 34 and 35 impose training and conference attending requirements. If you just listen to conditions, I'm asking. The Third Circuit, I thought, went through and as to the various conditions, traced them to a particular statute authorizing the Department of Justice to impose that condition. Do you have any condition that doesn't have a statutory analog like that that you could identify for us? Well, yes, and those are some of the examples I was giving. I mean, there's a condition that refers to nondisclosure agreements. There's a condition that refers to training and conference attendance. There's conditions that refer to body armor requirements that go beyond the statute. I think it's very common for conditions to take a general concept from a statute and to then be expanded to put more precise requirements or more detailed requirements that go beyond the statute. Remember, this is from a grant-making context, so I don't think it's disputed that the Office of Justice Programs has authority to impose more precise requirements, and I would submit that's why a special condition exists, so the office can address emergent law enforcement issues that fit within the grant program. So on your interpretation of special conditions, what would be the limiting principle? What would be the restriction on what the assistant attorney general could do? Well, I think it has to be related to law enforcement, so it has to be germane to the grant program. It has to have a law enforcement nexus, but I think that would be the one. But you can envision conditions that have a law enforcement nexus that are related to the law enforcement function and that would completely disrupt the formulaic nature of the grants. Well, I don't think you could put a condition on that changes the funding formula. That's prescribed by statute, and there are certain things that Congress prescribes, and one thing to note here is this is Congress re-appropriates the burn-jag program every year, re-appropriates the Office of Justice Programs, and it's not uncommon for Congress to place riders on what are priority purposes of the grant to codify special conditions that Congress likes. I think that's how the Buy America law came into place. They saw the Office of Justice Programs to place us on as a condition. The record shows that the Buy America condition was imposed prior to there being the Buy America statute? Yes, I see the Buy America body armor requirements, so I don't want to misspeak, but it was one of those two requirements that was originally a special condition that the Office of Justice Programs imposed around 2010, 2011, and then a few years later Congress codified that requirement and made it a federal statute, so it wasn't just a special condition of the burn-jag program, not just a special condition of the Office of Justice Programs, but it was actually made a statute, and I think that's notable because this is a program, again, that gets re-appropriated every year, riders are frequently placed on OJP funding, so if the special condition did stretch too far from its nexus to law enforcement, there is a feedback loop here, and I think there would be strong blowback from Congress because states and localities care about their burn-jag funds. I'm happy to address other questions about Section 101-02-86, but otherwise I'll turn to a couple other points. Now apart from Section 101-02-86, which we contend is an independent basis for the special conditions, there are a few other provisions that justify at least the three challenged conditions here. One of those provisions is 34 U.S.C. 101-53-85D, and that requires grant applicants to certify compliance with all provisions of this part of the statute and then all other applicable federal laws. Now in 2016, the Department's Inspector General found that grant recipients, despite certifying compliance with federal law, were not complying with 8 U.S.C. 1373. So in the summer of 2016, to remove any doubt from grant recipients that they were required to comply with Section 1373, the Department of Justice advised grant recipients that Section 1373 was in fact an applicable federal law and that beginning in the following grant year, fiscal year 2017, which is the grant term where this is a multi-year grant, so this is what we're still fighting about here, is that grant recipients would be required to, in addition to certifying that they generally comply with applicable federal laws, they would be required to specifically certify compliance with Section 1373. I think the district court's interpretation of 101-53-85D is limited to laws that specifically and only pertain to grant administration is an unduly narrow reading of the statute. It's the same reading that the Third Circuit undertook, isn't it? Yeah, that's correct. And it centers on the fact that on any other reading, the word applicable seems to be surplusage and thus to violate the canon of construction that every word should be given meaning. Well, I think the Third Circuit ultimately reached that conclusion. They recognized this was a close call, but applicable still does work here in the sense that an applicable law is one that applies to federal grant recipients. Yeah, but the statute would be subject to the same interpretation for which you advocate if the word applicable were not there. No, I think it would be broader. It would apply to all laws. It would be all federal laws, and there are laws that are on their face that are not applicable to state and localities and that are not germane to the grant program. And you couldn't be in violation of them? You couldn't be in violation if they didn't apply to you. Well, I think it also places a germaneness limitation. I mean, I think the converse is true here. If we take a look at, for example, Norfolk Western v. American Train Dispatchers, which found similar language is not limited without more. So simply referring to the word applicable is not enough. I think that the way the district court interpreted the statute would be saying that applied to federal grant management or that applied to federal grant administration. So I certainly agree that applicable is a meaningful word and that it has a limitation, but the district court read too much into that and read too much into that. They just mentioned two other subparts of Section 101.5.3. Help me with that. It read too much into it relative to how you did, and just could you specify the way in which you think it took, you think applicable does some limiting work? The district court made too much of it how? Exactly. So I think the district court read the statute as referring to applicable, all other applicable federal laws that apply to grant management. So they took applicable as referring to federal grant administration. Now, when Congress wants to limit a statute to apply to federal grant administration, it has done so. We gave two examples on page 24 of our blue brief where that exact language has been found, and the district court read that type of language into 101.5.3.A.5.D. here. Applicable is a law that's germane to the grant program and that applies to states and localities, and it does not do more than that. What's that mean, germane? It refers to it has a relationship to the Office of Justice Programs, and it applies to the Bern JAG grant program. So here it has some relationship to law enforcement, to promoting coordination, cooperation, information sharing with and between or among law enforcement agencies. I'm almost out of time, but two other provisions, 101.5.3.A.4. requires the reporting of programmatic information. Reporting on who law enforcement has taken into custody would be the type of programmatic information, since what is funded here is a program or activity, a law enforcement program or activity. 101.5.3.A.5.C. requires certification. There has been coordination with affected agencies, and the special conditions relate to policies related to coordination and cooperation. Thank you. Good morning, Your Honors. May it please the Court, I'm Jeffrey Dana, City Solicitor for the City of Providence. I will be splitting the appellee's response with my co-counsel, Matthew Jerzyk, who is the City Solicitor for the City of Central Falls. During my allotted time, I'll be addressing the Bern JAG statute generally, as well as 34 U.S.C. Section 101.02. Mr. Jerzyk will be addressing questions related to 101.5.3, as well as constitutional issues. So, Your Honors, the Bern JAG statute was passed by Congress to provide federal funds to local police departments. As noted, it's a formula grant program. It requires the executive branch to administer the funds appropriated by Congress in accordance with the formula and the terms of the statute. Nowhere within the statute is there any language that grants the Department of Justice the authority to impose the challenge conditions. In fact, nowhere within the Bern JAG statute, nor within any other statute, is there authority granted to the Attorney General to impose the challenge conditions. Well, that's what we're here to decide, isn't it, Mr. Dana? Yes, Your Honor. So the principal argument made by the government deals with the special conditions language in the description of the powers of the Assistant Attorney General. Is that a subject that you are prepared to address, or would you prefer us to reserve that for Mr. Jerzyk? Yes, I am prepared to address that, Your Honor. Okay. Why don't you do that? Sure. And so to that point, when the Department of Justice in their arguments say that they are not creating a deviation from the formula, they're creating a substantial deviation from the formula because they're proposing that if the challenge conditions are not complied with, there would be 100 percent withholding of the funds. Nowhere within the Bern JAG statute is there any conditions that can be imposed that would result in withholding. The key thing is within the Bern JAG statute because the body armor and the Buy America all have that same quality. Yes. And those are specifically enumerated conditions within specific statutes. Okay. And what do we make of the contention by the government that at least one of those statutes codified a prior assertion of authority by DOJ to impose that kind of all-or-nothing condition, notwithstanding that it would be seemingly in tension with the formula grant nature of the program? Well, there is no statute specifically codifying the authority of the Attorney General to impose the challenged conditions, the conditions we're challenging today that would allow for that. I know that. I know that. You just said it would be inconsistent with the formula grant program to have a condition of the kind the government wants to impose, and I can see that. Yes. But you also have to concede there are conditions that can be imposed on formula grants that are similarly in tension with the formula grant notion. You then said each of those, though, has a separate statutory pedigree. Yes. And therefore it's not a problem for you. That's correct. The government responded by saying that at least one of them had its origins in practice by DOJ before there was any statutory pedigree for it, and that the statute merely codified that assertion of power by the AG. If that were true, that would require you to give a different response than you've so far given as to why that's not a problem. Yes. So is that true, and if it is true, what's your response to it? I don't believe that's the case, or at least not similar to what they're proposing here. So I can move on to the bulk of the DOJ's argument, both this morning and before the other courts, before which this issue has been raised, has been focused on 101-02-A-6. So am I to understand that you don't know the answer to Judge Barron's question? That's correct. Okay. No court which has reviewed this issue has agreed with their assertion this morning that they derive the power to impose the challenge conditions under 101-02-A-6. The interpretation urged by the Department is severely at odds with the nature of the grant, with the nature of formula grant programs, and with the precise limits on the Attorney General's authority to deviate from funding allocations. The challenge conditions really stand alone in their reliance on a broad, open-ended authority. I think the Seventh Circuit really addressed very clearly this problem that they found with the Department's argument that they make this claim, but they can't demonstrate that the power they want to exercise is authorized anywhere else in the chapter, nor that they possess this authority and can delegate it to the Assistant Attorney General. Well, I guess the two possible responses to that, maybe you could address them. One is they make a textual argument, the government does, that it doesn't have to be elsewhere in the chapter, because the including language should be read with, shall exercise the powers to be grant of new power. So it doesn't matter if they didn't have it. The second argument, which I took to be implicit, is that insofar as they're right that some special conditions, like the body armor by America that were imposed pursuant to the statute by DOJ before there was any statutory pedigree for it, would permit them to say, well, there must have been a residual special conditions power all the time, and this statute is then just clarifying its existence. Okay. So I think there's two answers to that. First, that the including clause, again, as the circuit courts have noted, the including clause itself, and as Your Honors noted in the question and answers with the appellant, the including clause itself is not a stand-alone grant of authority to the Assistant Attorney General to attach any conditions to any grants that they decide to attach. The authority has to come from somewhere. The Attorney General has to have the authority to actually delegate to the Assistant Attorney General. If we can't find that anywhere else, then there's no power that the Assistant Attorney General actually has to impose such conditions. Also, with respect to the ninth circuit takes a somewhat different view of that question. You know, I mean, it's one thing to say that the power has to come from somewhere else, but the ninth circuit was prepared to give independent force to the special conditions clause. It simply found that these special conditions weren't the type of special conditions that the statute was talking about. Correct. Yes. That is the distinction. So it's dangerous for you to lump the circuits together, because the ninth circuit and the sixth circuit and the third circuit, excuse me, have traveled somewhat different paths to get to the same result. Yes, the ninth circuit did not rule in the same fashion as the third and seventh circuit on that threshold question regarding 101-02-A6, but rather rested on the fact that the term of art special conditions wasn't, these challenge conditions don't meet that definition. So with respect to special conditions, because that is an important note, in this case, third, seventh, ninth circuit, lower courts, who have actually addressed this, have all noted that it's a term of art referring to conditions for high-risk grantees with difficulty adhering to grant requirements. Here, these challenge conditions impose new eligibility requirements that have nothing to do with remediating a grantee's specific performance or financial risk, but they apply to every single burn-jag grantee, whether they're a high-risk grantee or not. So they cease to be special conditions as that term has been defined and understood. And as the third circuit in particular noted and discussed, based upon case law, federal grant law treatises, and administrative rulemaking, the term special conditions has consistently and uniformly been a term of art that is very narrowly defined. For example, even the White House's Office of Budget Management has consistently defined special conditions in this way as applying to high-risk grantees. The department hasn't identified any published or enacted authorities that define special conditions differently from this. They just want to have it defined in a different way. But it's not actually defined anywhere else as creating this broad, expansive authority that they wish to impose. So we must presume that Congress intends to incorporate the established meaning of a term, and the established meaning of the term special conditions is that it merely is a ministerial term. On your account, which I understand the logic of it, what would be the reason for Congress enacting this provision? You mean the amendment to 10102? So if you look at the legislative, really 10102A is a who statute. It says who has the authority and responsibility to oversee these grantees. And if you look at the legislative history in 2006, there was concern by Congress that there was not sufficient oversight happening, that OJP was not doing a good job with its oversight responsibility of high-risk grantees. Nothing in any of the legislative history suggests that Congress was making this amendment with the intention of granting expansive new authorities to an assistant attorney general. But on this last provision about special conditions, why include it at all if it already was present? Well, it's a clarifying statute. So it's clarifying, hey, we, Congress, believe that the OJP is not really doing its job properly. Maybe you need clarification that you, OJP, have this authority, and you, Attorney General, can delegate to your assistant attorney general the authority to properly administer these grants and impose the special conditions on high-risk grantees. And that would be consistent with the definition that Congress would have always seen special conditions utilized as. The special conditions reg was a department-wide reg? What's that? The special conditions for high-risk grantees was a department-wide reg? More than just the Byrne Grant Program? That's correct. More than just what OJP would be responsible for? Yes. I see. And also, it could be helpful to note in response to that question that the Byrne JAG Grant Program, the Byrne JAG Grant statute was also passed in 2006 with absolutely no reference between Byrne JAG and this amendment to 101-02. And if you look at that legislative history preceding Byrne JAG plus predecessor statutes that also provided for federal funding to local police departments, there was a lot of concern on the part of Congress at the time of passing this and its predecessor statutes that the federal government, the executive branch not utilize the federal funding that Congress appropriates for local police departments as a mechanism for imposing federal policies on them. It was very clear through the legislative history that the goal was to provide funding to local police departments for them to use as they saw fit. I see that my time is nearly finished. If there are any more questions, if there are not, I'll cede the rest of the time to my co-counsel. May it please the Court. Good morning, Your Honors. Matthew Jerzyk on behalf of the City of Central Falls. This morning I'll be addressing the department's arguments relative to Section 101-53. And in that section they make three distinct arguments. First, regarding Section 101-53A-4. This is the part of 101-53 where the department alleges they have the statutory authority for their notice condition. That statute says that an application shall include an assurance that for each fiscal year covered by the application, the applicant shall maintain and report such data, records of information, programmatic and financial, as the Attorney General may reasonably require. The Ninth Circuit highlighted the word programmatic by citing the definition as having a program. And specifically the Bern JAG statute in 101-52 outlines eight fundable programs that reference the word programmatic. Notably, none of these eight programs include the enforcement of civil immigration laws or any other DOJ priority unrelated to the Bern JAG program. Further, all of the other provisions neighboring subsection A-4 concern assurances relating to the application process itself. Finally, nowhere in this provision does Congress force grantees to provide a different agency, the Department of Homeland Security, with real-time operational assistance. Like the rest of 101-53, this provision pertains solely to grant administration. The second provision of 101-53 that the department cites as having statutory authority for the access provision is 101-53A-5C, which requires, in our case, our mayor to certify that there has been appropriate coordination with affected agencies. This provision requires applicants to certify prior to submitting the application that they have coordinated with agencies that will be affected by the grant. In the case of Central Falls, we applied in fiscal year 2017 for a Bern JAG grant to upgrade our technology issues with our police department.